In re RUGGERI ELECTRICAL
CONTRACTING, INC.,
Debtor.

UNITED STATES of America, Plaintiff,

v.

Paul BOROCK, Trustee,
et al., Defendants.

Bankruptcy Nos. 93–49180–R, 95–4059–R.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Aug. 24, 1995.

Karen A. Smith, Tax Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for plaintiff.

Timothy Miller, Detroit, MI, for defendants, trustee.

Robert Gordon, Southfield, MI, for defendant Electrical Workers Fund.

## SUPPLEMENTAL OPINION

STEVEN W. RHODES, Chief Judge.

This adversary proceeding was filed by the IRS to determine whether funds levied by the Internal Revenue Service ("IRS") 20 days prior to the involuntary petition are property of the estate. The IRS contends that the notice of levy divested the debtor of its interest in the property. The trustee and the Electrical Workers' Fringe Benefit Fund ("Electrical Workers") argue that it did not. All three parties have filed their respective motions for summary judgment. Following oral argument, the Court held that the funds levied were not property of the estate, thereby granting the IRS' motion for summary judgment. This opinion supplements an opinion given in open court on June 12, 1995.

### I.

On August 4, 1993, the IRS issued a notice of tax levy to NBD based on a tax debt owed by the debtor in the amount of $195,661.60. At the time, the debtor held approximately $54,306.53 in its checking account with NBD. Thereafter, NBD debited the debtor's account in the amount of $6,884.98 to pay a secured loan balance, an audit fee, and NBD's attorney fees. NBD retained the balance of the funds pending expiration of the required 21 day waiting period provided in the notice of levy.

An involuntary petition was filed against the debtor on August 24, 1993, 20 days following the notice of levy. Funds held by NBD for the debtor at that time totalled $47,422.55. The order for relief was entered February 8, 1994. Paul Borock was appointed trustee on February 9, 1994. Pursuant to

a stipulated order, NBD turned over the funds to the trustee pending further court order as to their disposition.

On January 23, 1995, the IRS filed the present adversary proceeding to determine whether the notice of levy divested the debtor of its interest in the funds. The trustee and the Electrical Workers contend that the debtor retained a property interest in the funds during the 21 day period after the notice of levy was issued. Therefore, they contend that the funds became property of the estate.

## II.

■ The authority of the IRS to levy and seize a delinquent taxpayer's property is contained in 26 U.S.C. §§ 6331 and 6332. Under § 6332(c), banks do not surrender deposits to the IRS pursuant to a levy until 21 days after service of the levy. The purpose for this delay is to give the taxpayer the opportunity to notify the IRS of errors with respect to the garnished accounts. Technical & Misc. Revenue Act of 1988, H.R.Conf.Rep. No. 1104, 100th Cong., 2d Sess. 221 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5048, 5281. The tax code does not indicate when transfer of ownership of the funds occurs.

Upon the filing of the bankruptcy petition, a bankruptcy estate is created. The estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The leading case determining what constitutes property of the estate when there has been a prepetition levy by the IRS is *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). *Whiting Pools* involved a tax levy upon tangible personal property. The Court concluded that the property should be returned to the debtor because the debtor's interest in the property had not been extinguished prepetition by the levy. The Court noted that IRS regulations provide for seizure and sale of tangible property, but that ownership of the property does not transfer from the debtor until the property is sold. *Whiting Pools,* 462 U.S. at 211, 103 S.Ct. at 2316–17. The Court further disavowed the dictum in *Phelps v. United States,* 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975), that a levy gives the IRS full legal title to the property levied upon. *Whiting Pools,* 462 U.S. at 210 n. 18, 103 S.Ct. at 2316 n. 18.

The trustee contends that this Court should follow the reasoning of *Whiting Pools* to find that the levy did not divest the debtor of its interest in the property. However, several courts have distinguished *Whiting Pools* on the basis that *Whiting Pools* involved tangible saleable property, and that the debtor retained the right of redemption and surplus after sale. On the other hand, with intangible property, as here, there are no identifiable rights after levy. *See In re Professional Tech. Servs.,* 71 B.R. 946, 950 (Bankr.E.D.Mo.1987) (the only rights the debtor has after levy is redemption and surplus, which have no application outside of the context of saleable property), *rev'd on other grounds,* 1987 WL 47833 (E.D.Mo. Oct. 15, 1987).

Likewise, in *In re Rose,* 112 B.R. 12 (Bankr.E.D.Tex.1989), a case involving a chapter 11 debtor and levy by the IRS on the debtor's bank account, the court stated:

[T]his court remains unconvinced that there is a sufficient property interest remaining in the Debtor following service of a pre-petition notice of levy to cause the levied upon property to become a part of the estate upon the filing of the bankruptcy petition. [In cases holding to the contrary] the existence of a remaining interest in cash … is just assumed without there being any persuasive reasoning to identify a property interest to be protected. Insofar as the IRS is concerned the service of the notice of levy is complete upon the delivery of the document to the bank holding the funds. There is nothing further for the IRS to do since the document itself contains notice of the seizure of the funds and a demand for payment of the funds as required in 26 U.S.C. §§ 6331 and 6332. The remainder of the provisions dealing with levy and distraint are not applicable to service of a notice of levy on a bank account but deal with the physical seizure of tangible property or intangible rights that must then be disposed of through public sale to convert them to cash. It

seems clear that the seizure of cash or cash equivalent in the form of a bank account is very different from the seizure of tangible property.

*Id.* at 14–15. *See also In re Brown,* 126 B.R. 767, 773 (N.D.Ill.1991) (the procedural right to receive notice of seizure under § 6335(a) only has meaning to the extent that it protects an underlying substantive right, i.e., a right of redemption or a right to recover excess proceeds of a tax sale; neither of these substantive rights applies to cash property). Moreover, the debtor retains no identifiable interest in the money levied upon if the tax debt is greater than the amount levied upon.

Conversely, other courts have relied on the absence of any restricting language in *Whiting Pools* to find that the *Whiting Pools* decision applies to intangible property as well as tangible property. *In re Flynn's Speedy Printing, Inc.,* 136 B.R. 299, 301 (Bankr.M.D.Fla.1992) ("no language in *Whiting Pools* would serve to restrict that decision solely to tangible personal property"). Moreover, as the court pointed out in *In re Challenge Air Int'l, Inc.,* 952 F.2d 384 (11th Cir.1992), the Supreme Court granted *certiorari* in *Whiting Pools* to settle the conflict between *United States v. Whiting Pools, Inc.,* 674 F.2d 144 (2d Cir.1982) and *Cross Elec. Co., Inc. v. United States,* 664 F.2d 1218 (4th Cir.1981). *Cross* involved accounts receivable, which are intangible. Had the Supreme Court intended for *Whiting Pools* to apply only to tangible property, it either would not have recognized a conflict and refused to grant *certiorari,* or it would have indicated that no conflict existed between the two decisions due to the different types of property involved. *Challenge Air,* 952 F.2d at 387.

■ However, the determination need not depend on the distinction between tangible and intangible property. For the reasons stated below, this Court finds that the relevant distinction to be made is between saleable and non-saleable property.

When the IRS levies on saleable property, the debtor retains two identifiable interests. The debtor has the right to redeem the property before the sale. 26 U.S.C. § 6337.

The debtor also has the right to any surplus after the sale. 26 U.S.C. § 6342(b). "However, when the IRS levies upon a nonsaleable asset (i.e., cash or a cash equivalent), the debtor does not retain any of the substantive property interests which the notice and sale provisions of § 6335 are designed to protect. Cash and cash equivalents cannot meaningfully be redeemed … or sold." *Brown,* 126 B.R. at 771. Furthermore, although in *Whiting Pools* there is no specific language restricting the holding to tangible property, there is language which appears to restrict the holding to *saleable* property:

> Ownership of the property is transferred only when the property is sold to a bona fide purchaser at a tax sale. In fact, the tax sale provision itself refers to the debtor as the owner of the property after the seizure but prior to the sale. Until such sale takes place, the property remains the debtor's and thus is subject to the turnover requirement of § 542.

*Whiting Pools,* 462 U.S. at 211, 103 S.Ct. at 2316–17 (citations omitted) (footnotes omitted). Moreover, the Court recognized that there may be situations in which the levy would pass ownership of property. "Of course, if a tax levy or seizure transfers to the IRS ownership of the property seized, § 542(a) may not apply." *Whiting Pools,* 462 U.S. at 209, 103 S.Ct. at 2315.

■ In the present case, the tax debt owed by the debtor at the time of the levy was $195,661.60, well in excess of the amount levied upon. The only rights the trustee obtained when the petition was filed were those the debtor held; the right to redemption or surplus, which, for the reasons stated above, are not applicable, and the right to notify the IRS of a mistake within 21 days. There was no indication that the IRS made a mistake in its determination of the amount owed. At the end of the 21 day period, plus any additional time allowed under § 108(b), all rights were extinguished.

Accordingly, this Court finds that after the IRS levy on the debtor's bank account, the debtor did not retain any identifiable interest

in the account. Therefore, the funds did not become property of the estate.